## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA
COURT FILE NO.: _____

| | |
|---|---|
| Michael Tischler and Samantha Tischler, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| MinnCo Credit Union, | |
| Defendant. | |

**COME NOW** Plaintiffs Michael Tischler and Samantha Tischler for their cause of action against Defendant MinnCo Credit Union herein state and allege as follows:

### I.   INTRODUCTION

1.     Plaintiffs' class action complaint arises under the Truth in Lending Act, codified as 15 U.S.C. §§ 1601 et seq. and its implementing rules under Regulation Z. Regulation Z, 12 C.F.R. § 1026 et seq. for Defendant's failure to provide required disclosures and misrepresentations related to the material terms and nature of a consumer loan.

2.     Plaintiffs also bring claims under Minn. Stat. § 325F.691, Minn. Stat. § 47, Minn. Stat. § 58.13, and Minn. Stat. § 8.31 for MinnCo Credit Union's unreasonable delay in the closing of the Plaintiffs' mortgage loan.

## II.   JURISDICTION

3.      Jurisdiction is conferred on this Court by 15 U.S.C. § 1640(e), 28 U.S.C. §

1331, and further pursuant to 28 U.S.C. § 1367 for pendent state law claims.

4.      This action arises out of Defendant's violations of the Truth in Lending Act,

15 U.S.C. § 1601 et seq, and Defendant's violations of Minnesota's Deceptive

Trade Practice Act, Minn. Stat. § 325F.691, Minn. Stat. § 47, Minnesota's

Mortgage Originator and Servicer Licensing Act, Minn. Stat. § 58.01 et seq., and

Minnesota's Private Attorney General Statute, Minn. Stat. § 8.31.

5.      Venue is proper in this District because the acts and transactions occurred

here, Plaintiffs reside here, and Defendant transacts business here. See *Ford*

*Motor Co. vs. Montana Eighth Judicial District Court*, 2021 WL 1132515 (U.S.

March 25, 2021).

## III.   PARTIES

6.      Plaintiffs Michael Tischler and Samantha Tischler (the "Tischlers") are a

married couple residing in Willow River, Pine County, Minnesota.

7.      Plaintiffs' home is located at 11982 Burman Drive, Willow River, 55795,

legally described as follows:

> The North Half of the Northeast Quarter (N ½ of NE ¼) of Section
> Twenty-nine (29), Township Forty-four (44) Range Twenty-one (21),
> Pine County, Minnesota, EXCEPTING THEREFROM the East Half of
> the Northeast Quarter of the Northeast Quarter (E ½ of NE ¼ of NE
> ¼), Section Twenty-nine (29), Township Forty-four (44), Range
> Twenty-one (21), Pine County, Minnesota.

(the "Home" or "Property").

8.     The Plaintiffs are consumers as defined by 15 U.S.C. 1602(i), as they are natural persons who were offered or extended credit for personal, family, or household purposes.

9.     The Home was, at all times relevant to this action, the Tischlers' principal dwelling pursuant to 15 U.S.C. § 1602(w).

10.     Defendant MinnCo Credit Union ("MinnCo") is a Minnesota credit union with no registered address listed with the Minnesota Secretary of State. MinnCo is licensed by the Minnesota Department of Commerce, with registration number 22506, to operate in Minnesota as a Credit Union. Defendant MinnCo has an address filed with the Minnesota Department of Commerce at 235 West First Avenue, Cambridge, MN 55008.

11.     MinnCo is a creditor, as defined by 15 U.S.C. 1602(g), who regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

12.     MinnCo is a "Residential Mortgage Originator" as defined by Minn. Stat. § 58.02, subd. 19, who, directly or indirectly, for compensation or gain or in expectation of compensation or gain, solicits or offers to solicit, or accepts or offers to accept an application for a residential mortgage loan through any

medium or mode of communication from a borrower, or makes a residential

mortgage loan.  "Residential Mortgage Originator" includes a lender.

13.     MinnCo is a "lender" as defined in Minn. Stat. § 58.02, subds. 11, 12, and 16

as a credit union who makes a residential mortgage loan and as defined in Minn.

Stat. § 47.206, as a credit union making a conventional loan.

## IV.  FACTS

### FACTUAL ALLEGATIONS AS TO THE TISCHLERS

14.     Michael Tischler owned the Property with his father and friend.  For all

relevant times, he and his wife resided at the Property as their principal dwelling.

15.     Michael Tischler purchased the Property from his father and friend (the

"sellers").

16.     Michael Tischler applied for a loan from MinnCo Credit Union ("MinnCo")

to buy out the others' interest in the Property.

17.     Because Michael Tischler already had an interest in the Property, any

extension of credit of credit to buy out the other owners' interest was a refinance

and not a residential mortgage transaction pursuant to Reg Z § 1026.2(a)(23).

18.     Subsequent to Michael Tischler's application for the loan, MinnCo did not

provide a loan estimate pursuant to Reg. Z. § 1026.37.

19.     On January 5, 2021, Plaintiff Michael Tischler attended a closing at the

MinnCo Credit Union branch at the Cambridge branch ("First Closing").

20.     At that closing, he signed various documents, including the following:

      a.  Closing Disclosure;

    b.   Balloon Note;

    c.   Mortgage ("First Mortgage").

21.    As part of this closing, Plaintiff Michael Tischler executed and delivered a mortgage securing a note in the principal amount of $124,000.00 in favor of MinnCo Credit Union ("MinnCo"), which was identified with a loan number of: 1a889e63 (the "Note"). The First Mortgage and Note are attached as **Exhibit 1,** and this complaint will refer to the $124,000.00 secured loan, generally, as the "Home Loan."

22.    The Note's terms indicate that 3% annual interest will be charged on the unpaid principal.

23.    The Note has a five-year balloon, maturing on February 1, 2026, which triggers a final balloon payment of $110,768.42 at that time.

24.    The First Mortgage lists only Michael Tischler as a "borrower," and the document bears only his signature.

25.    The bank officer who originated this loan was Anthony E. Scalzo of MinnCo.

26.    In connection with the First Closing, Michael Tischler received a Closing Disclosure form dated January 5, 2021. The Closing Disclosure form is attached as **Exhibit 2**.

27.    The closing disclosure indicates that the Home Loan is a home equity loan with a five-year term.

28.    The note indicates that the borrower cannot obtain additional disbursements from the loan in the future, and the entire amount of the loan was fully extended at the outset.

29.    Clearly, MinnCo did not reasonably contemplate that there would be repeated transactions or additional draws on the Home Loan, which fails the test for open-end credit under 12 C.F.R. § 1026.2(a)(20).

30.    Therefore, MinnCo's Home Equity Loan product is a closed-end loan.

31.    Pursuant to the Truth-in-Lending Act, MinnCo is required to make certain disclosures in a closed-end loan.

32.    A creditor in a closed-end consumer credit transaction secured by real property shall provide the consumer with good faith estimates of the disclosures required in Reg. Z. § 1026.37. Reg Z. § 1026.19(e)(1)(i).

33.    Additionally, because the incident mortgage was secured by his homestead, MinnCo had to make other disclosures.

34.    MinnCo did not provide a notice of right to rescind. Reg. Z § 1026.23.

35.    Because MinnCo did not provide a notice of right to rescind, Michael Tischler has a three-year right to rescind pursuant to 15 U.S.C. § 1635; Reg. Z § 1026.23.

36.    After the First Closing, Michael Tischler began making monthly payments to MinnCo.

37.    Michael Tischler was able to login his MinnCo account, and he could see the Home Loan listed as a liability account on his back ledger.

6

38.    As Michael Tischler made payments, he could see those payments post to his account as one would expect when making loan payments.

39.    Also, after the First Closing, Michael Tischler began construction on the Home.

40.    Michael Tischler is a licensed contractor by trade.

41.    The scope of the work on the Home was to add a new addition to the Home.

42.    He embarked on this new addition job as he could, with no set schedule for completion.

43.    Michael Tischler later became aware that the sellers were still listed as owners on the Pine County property tax records.

44.    Michael Tischler contacted Pine County Property Records, and they informed him that there had not been a change of ownership or deed recorded that reflected the conveyance.

45.    Michael Tischler contacted MinnCo about the errant property tax records.

46.    MinnCo informed Michael Tischler that they did not have any record of his mortgage or note, and that his loan file only had blank forms in it.

47.    Michael Tischler informed MinnCo that he could see the Home Loan listed as a liability on his online banking account records.  He also informed MinnCo that he had been making payments since on or around January 2021.

48.    MinnCo informed Michael Tischler that the mortgage loan had not closed correctly, and that it would have to re-close the mortgage loan.

49.    MinnCo also informed Michael Tischler that he was not the only customer that this happened to.

50.    MinnCo informed Michael Tischler that Mr. Scalzo had terminated his employment with MinnCo, and several of his loans were not closed correctly.

51.    Throughout this process, MinnCo referred to this re-closing as a "second" closing.

52.    As part of this Second Closing, MinnCo undertook a new inspection and underwriting process.

53.    MinnCo required a septic compliance inspection report before it would undertake the Second Closing.

54.    It also ordered a new appraisal because the original appraisal was too old.

55.    The undertaking of a septic compliance inspection and a new appraisal indicates that MinnCo was embarking in a loan underwriting process for the loan.

56.    MinnCo had not required a septic compliance inspection report as a condition of closing the mortgage loan in January 2021.

57.    Additionally, the proceeds from the Note had already been advanced, and, as the Tischers were to find out later, a new note was not created or executed at the Second Closing.

58.    MinnCo indicated that part of the home was a "work in progress" because Michael Tischler had not completed the new addition job.

59.     MinnCo would not accept "work in progress" on the appraisal and so an appraisal was never conducted despite MinnCo's insistence that it would need to be.

60.     Before it would undertake a new closing of Michael Tischler's mortgage loan, MinnCo required him to complete the "work in progress" of the new addition, which also included upgrading and repairing the septic system.

61.     This also was not a condition of closing the mortgage loan in January 2021, and, indeed, Michael Tischler and MinnCo had previously agreed to close the loan without any such requirement.

62.     To be able to correctly close the Home Loan, and to complete the now-required "work in progress" and septic upgrade, MinnCo required Plaintiffs to execute a Home Equity Line of Credit Agreement (the "HELOC") in favor of MinnCo for $30,000.00.

63.     MinnCo also required the Tischlers to escrow the HELOC funds, requiring the Tischlers to put $12,000.00 into an escrow account until the work was completed on the septic system.

64.     Mark Fado at MinnCo and Grant Lindberg, MinnCo's attorney, both represented that the "work in progress" and the septic upgrade must be completed in order to close the second time, record the title documents, and properly reflect the Tischlers' ownership of the property.

65.    The latter was a concern because, based on information given to them by Pine County, the Tischlers could not claim the tax benefits of homestead status without the recordation of the title documents.

66.    As part of the new closing of their Home Loan, MinnCo held a closing where it required both Michael and Samantha Tischler to execute new documents.

67.    On July 22, 2022, MinnCo undertook a new closing ("Second Closing").

68.    Related to the Home Loan, MinnCo required the Tischlers to sign the following documents:

   a. a Mortgage that had a stated retroactive date of January 5. 2021 ("Second Mortgage");

   b. a Second Home Rider;

   c. a Balloon Rider;

   d. a Homestead Application;

   e. a Limited Power of Attorney;

   f. an Affidavit Regarding Purchasers/Borrowers;

   g. and other documents.

69.    The Second Mortgage lists both Michael Tischler and Samantha Tischler as "borrowers," and it bears both their signatures.  The Second Mortgage is attached as **Exhibit 3**.

70.    The Second Home Rider indicates that the Home was the Tischlers' second home, which was not correct.  The Home was their principal dwelling for all

times relevant to this action. The Second Home Rider form is attached as **Exhibit 4**.

71.     The other documents presented at the Second Closing were signed by both Michael Tischler and Samantha Tischler.  The Balloon Rider is attached as **Exhibit 5**.  The Limited Power of Attorney is attached as **Exhibit 6**.  The Affidavit Regarding Purchasers/Borrowers form is attached as **Exhibit 7**.

72.     These changes to the Home Loan required MinnCo to make new disclosures to both Michael Tischler and Samantha Tischler.

73.     Under TILA, the loan estimate must be mailed to the borrower not later than the third business day after the creditor receives the consumer's application. Reg. Z § 1026.19(e)(1)(iii).

74.     Then, under TILA, the credit must ensure that the consumer receives the closing disclosures not later than three business days before consummation for mortgage loans. Reg. Z § 1026.19(f)(1)(ii).

75.     Consummation is defined under TILA as "the time that a consumer becomes contractually obligated on a credit transaction."  Reg. Z § 1026.2(a)(13).

76.     However, even after consummation, a creditor must issue new disclosures when a subsequent change occurs that "rises to the level of a change in the terms of the legal obligation." Reg Z., Official Interpretations § 1026.17(c)(1)-2.

77.     Because MinnCo required the Tischlers to borrow additional money to close the Home Loan, that requirement constituted a change in the terms of the legal obligation that required new disclosures to be made.

78.    More specifically, the additional $30,000.00 was a finance charge, which includes: (a) any charge; (b) payable directly or indirectly by the consumer; (c) imposed directly or indirectly by the creditor; (d) as an incident to or a condition of the extension of credit.

79.    The TILA finance charge is intended as a measure of what the costs of credit is to the consumer, not merely a measure of profit or compensation to the creditor.

80.    Because the HELOC was incident to or a condition of the extension of credit under the closed-end loan, MinnCo was required to provide new disclosures; without them, the Tischlers would have no way of understanding the cost of credit associated with the closed-end loan.

81.    Furthermore, under TILA and its required disclosures, the APR disclosure translates the cost of the credit captured in the finance charge to a yearly percentage rate. Here, because the APR on the original closing disclosure did not incorporate the $30,000.00 finance charge and MinnCo failed to provide a new disclosure, the APR, as disclosed to the Tischlers, was inaccurate and materially understated.

82.    The loan calculations on the closing disclosure from the original closing were as follows:



83.   Had those loan calculations been performed properly and included the additional $30,000.00 in finance charges they would have been as follows:

| Annual Percentage Rate (APR): | 9.65% |
| Finance Charge: | $49,375.15 |
| Amount Financed: | $92,764.87 |
| Total of Payments: | $142,140.02 |

84.   The disclosure provided with the loan understated the APR by over 6.5% and understated the finance charges by over $31,000.

85.   Additionally, adding Samantha Tischler as a co-borrower and signatory to the loan documents, including the Second Mortgage securing the obligation and the other loan documents, constitutes a change in the terms to which the Tischlers were bound, requiring new TILA disclosures to be made.

13

86.     To be sure, Samantha Tischler's addition as mortgagor would require MinnCo to provide her a notice of right to rescind, which MinnCo never did for this obligation.

87.     The purpose of the Truth in Lending Act is to assume meaningful disclosure of credit terms so consumers will be able to avoid the uninformed use of credit and protect consumers against inaccurate and unfair credit billing practices. 15 U.S.C. § 1601(a).

88.     MinnCo did not provide, and Plaintiffs did not receive, all the disclosures required by TILA in connection with the Home Loan at either closing.

89.     Indeed, because of the botched Home Loan closing process, there is no way that MinnCo could make any of the required TILA disclosures in a clear and conspicuous matter in a form that the borrowers could complete.

90.     Sometime after the Second Closing, Michael Tischler was having trouble completing the required "work in progress" and septic upgrade.

91.     MinnCo had not recorded the title documents and the Tischers' ownership of the property was not of record.

92.     He was running overbudget because of the post-COVID inflationary pressures on building supplies.

93.     Understanding that MinnCo would not record the title documents and make the Tischers the owners of record without the required work completion, Michael Tischler sought to borrow more money from MinnCo to cover the increased costs.

94.    While in discussions with MinnCo and its attorney, Grant Lindberg, Michael Tischler discovered that the title documents had all been recorded.

95.    Michael Tischler asked Grant Lindberg how the documents were recorded if the work on the Home was not completed, as MinnCo has required.

96.    Grant Lindberg's response was "Because I'm good."

97.    Tischler concluded that completing the "work in progress" and septic upgrade was not necessary to close the Home Loan.

98.    MinnCo falsely required the Tischlers to borrow an additional $30,000.00 to close a loan a second time that was already a year and a half old.

99.    When contemplating the after-the-fact $30,000 second loan, there is no way that MinnCo could make any of the required TILA disclosures related to the Home Loan in a clear and conspicuous matter in a form that the borrowers could complete.

## FACTUAL ALLEGATIONS COMMON TO PLAINTIFFS
## AND THE PUTATIVE CLASSES

100.   MinnCo failed to comply with Reg. Z. § 1026.37. Reg. Z. § 1026.19(e)(1)(i) and Reg. Z § 1026.23 in connection with credit extended to borrowers secured by the borrowers' principal dwellings by failing to provide loan estimates and notices of right to rescind in accordance with Reg. Z.

101.   MinnCo caused unreasonable delay in processing borrowers' loan applications.

102.   MinnCo caused unreasonable delay in the closing of residential mortgage loans.

103.   MinnCo's unreasonable delay also included the failure to take actions necessary to process or approve the loan within a reasonable period.

104.   MinnCo's unreasonable delay included adding new requirements for processing or approving loans that were not disclosed to borrowers.

105.   MinnCo also made or caused to be made, directly or indirectly, false, deceptive, or misleading statements or representations in connection with a residential loan transaction. Namely, MinnCo or its agents represented that additional conditions to closing or consummation were required in order to correctly close loans and record title documents.

106.   Those additional conditions include payment of charges imposed by defendant payable by the borrowers incident to the extension of credit and were not included in the original finance charge, thus improperly disclosing the finance charge in violation of 15 U.S.C. § 1605 and Reg. Z § 1026.4.

107.   By calculating the annual percentage rate (APR) based upon improperly calculated and disclosed finance charges and amount financed, 15 U.S.C. 1606, Reg. Z § 1026.22, MinnCo understated the disclosed annual percentage rate in violation of 15 U.S.C. § 1638(a)(4) and Reg. Z § 1026.18(e).

108.   Numerous borrowers have been subject to the foregoing conduct by MinnCo and more specifically numerous borrowers working with MinnCo's former loan officer, Anthony Scalzo.

## CLASS ALLEGATIONS

1.      Defendants conduct has impacted two (2) separate classes of persons.

2.      The first class or "TILA Class" is defined as follows: a class of similarly situated persons defined as (i) all borrowers (ii) that sought an extension of credit from MinnCo; (iii) where MinnCo understated the finance charge; and (iv) where MinnCo understated the annual percentage rate; (v)where MinnCo did not provide loan estimates; and (vi) where MinnCo did not provide notices of right to rescind; (vii) in violation of Reg. Z. § 1026.37. Reg Z. § 1026.19(e)(1)(i), Reg. Z § 1026.18(e), Reg. Z § 1026.23, and Reg. Z 1026.4.

3.      The class period for the "TILA Class" begins one year before the date this case was filed and continues through the conclusion of this case.

4.      The second or "State Law Class" is defined as follows: a class of similarly situated persons defined as (i) all borrowers (ii) that submitted a residential loan application to MinnCo; (iii) where MinnCo failed to take actions necessary to process or approve the loan within a reasonable period of time; (iv) or where MinnCo unreasonably delayed the closing of residential mortgage loans; (v) or where MinnCo added new requirements for processing or approving loans that were not disclosed to borrowers; (vi) or where MinnCo misrepresented that there were additional conditions to closing or consummation required in order to correctly close loans and record title documents; (vii) in violation of Minn Stat. §§ 325F.691, Subd. 1, Minn. Stat. § 47.206, and Minn. Stat. § 58.13.

5.     The class period for the State Law Class begins six years before the date this case was filed and continues through the conclusion of this case.

6.     All classes are so numerous that joinder of all members is impracticable.

7.     There are questions of law and fact, common to the classes, which predominate over any questions affecting only individual class members. The principal questions are:

8.     Whether MinnCo's conduct violated 12 C.F.R. § 1026.17(a)(1) and 15 U.S.C. § 1638.

9.     Whether MinnCo's conduct violated Minn. Stat. §§ 325F.691, Subd. 1(b)(2) and 47.206, Subd. 7(d)(2).

10.     Whether MinnCo's conduct violated Minn. Stat. §§ 325F.691, Subd. 1(b)(3) and and 47.206, Subd. 7(d)(3).

11.     Whether MinnCo's conduct violated Minn. Stat. § 58.13 Subds. 1(a)(3), 1(a)(9).

12.     There are no individual questions, other than the identification of class members, which can be determined by ministerial inspection of Defendant's records or records of creditors.

13.     Plaintiffs will fairly and adequately protect the interests of the class and are committed to vigorously litigating this matter.

14.     Plaintiffs have retained counsel experienced in handling class actions of this type and consumer claims. Neither the Plaintiff nor her counsel have any interest which might cause her not to vigorously pursue this claim.

15.    Plaintiffs' claims are typical of the claims of the class, which all arise from the same operative facts and based on the same legal theories.

16.    Certification of the Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate in that:

17.    The questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and

18.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

19.    Certification of a class pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate. Defendant has acted in a uniform manner toward the class thereby making injunctive and declaratory relief appropriate to cease further and future illegal conduct.

20.    Plaintiffs request that the Court certify a hybrid class or classes combining the elements of Rule 23(b)(3) for monetary damages and Rule 23(b)(2) for equitable relief.

## V.    LEGAL CLAIMS

### COUNT I
### TRUTH-IN-LENDING VIOLATIONS
### 15 U.S.C. § 1601 et seq.

109.    Plaintiffs incorporate the above paragraphs by reference.

110.    When entering into a consumer credit transaction, the Truth-In-Lending Act requires that creditors provide consumers with certain disclosures that are made in a clear and conspicuous manner regarding their loan. *See* 12 C.F.R. §

1026.40(a)(1) and 15 U.S.C. § 1637 for open-end consumer credit transactions secured by the consumer's principal dwelling. *See* 12 C.F.R. § 1026.17(a)(1) and 15 U.S.C. § 1638 for closed-end consumer credit transactions.

111.   Where any of the consumer's material disclosures are not given in conformity with TILA or Regulation Z, a consumer may seek actual damages (15 U.S.C. § 1640(a)(1)), statutory damages in the amount of twice the finance charge up to $4,000 (15 U.S.C. § 1640(a)(2)(A)), and attorney fees (15 U.S.C. § 1640(a)(3)).

112.   At the Second Closing, MinnCo changed the legal obligation of the Home Loan.

113.   MinnCo required the Tischlers to borrow $30,000 and undergo repairs of the property to close the loan at the Second Closing.

114.   This amount should have been included in the finance charge on the original loan because it was imposed by MinnCo and payable by the Tischlers incident to the extension of credit as required by 15 U.S.C. § 1605, Reg. Z § 1026.4.

115.   Absent initial or updated disclosures, the finance charge was improperly disclosed in violation of 15 U.S.C. § 1638(a)(3) and Reg. Z § 1026.18(d).

116.   Furthermore, by calculating the annual percentage rate (APR) based upon improperly calculated and disclosed finance charges and amount financed, 15 U.S.C. § 1606, Reg. Z. § 1026.22, the defendant understated the disclosed annual percentage rate in violation of 15 U.S.C. 1638(a)(4) and Reg. Z. § 1026.18(e).

117.   MinnCo added Samantha Tischler as a borrower on the Second Mortgage and the other mortgage documents at the Second Closing.

118.   After consummation of a close end loan secured by the borrower's homestead, a creditor must issue new disclosures when a subsequent change occurs that "rises to the level of a change in the terms of the legal obligation." Reg Z., Official Interpretations § 1026.17(c)(1)-2.

119.   MinnCo failed to issue new disclosures at the Second Closing despite the changes to the legal obligation.

120.   Additionally, the security for the Home Loan was the Tischler's primary domicile.

121.   Adding Samantha Tischler as a mortgagor at the Second closing required MinnCo to also provide a notice of right to rescind to her.

122.   In a transaction subject to rescission, a creditor shall deliver two copies of the notice of right to rescind to each consumer entitled to rescind. 15 U.S.C. § 1635(a) and 12 C.F.R. § 1026.15(b).

123.   For failing to deliver the notice of right of rescission, the credit is subject to penalties of actual damages (15 U.S.C. § 1640(a)(1)), statutory damages in the amount of twice the finance charge up to $4,000 (15 U.S.C. § 1640(a)(2)(A)), and attorney fees (15 U.S.C. § 1640(a)(3)).

124.   As a result of MinnCo's violations of the Truth-In-Lending Act, Plaintiffs have suffered damages and injury, and MinnCo is liable for statutory damages in the amount of $4,000 (15 U.S.C. § 1640(a)(2)(A)), actual damages (15 U.S.C. §

1640(a)(1)), and reasonable attorney fees for the costs of this action (15 U.S.C. § 1640(a)(3)).

**COUNT II**
**VIOLATIONS OF THE MINNESOTA CONSUMER FRAUD ACT**
**MINN. STAT. § 325F.691**
**VIOLATIONS OF THE MINNESOTA MORTGAGE ORIGINATOR AND**
**SERVICER LICENSING ACT**
**MINN. STAT. § 58.13**
**VIOLATIONS OF MINN. STAT. § 47.206**
**AND**
**VIOLATIONS OF THE PRIVATE ATTORNEY GENERAL STATUTE**
**MINN. STAT. § 8.31**

125.   Plaintiffs incorporate the above paragraphs by reference.

126.   At all relevant times, MinnCo acted as a "lender" as defined by Minn. Stat. § 47.206, Subd. 1(a).

127.   By the acts complained of herein, MinnCo violated Minnesota's Consumer Fraud Act and Minn. Stat. § 47.206 by causing unreasonably delay in processing Plaintiffs' loan application.

128.   MinnCo's unreasonable delay included adding new requirements for processing or approving Plaintiffs' loan that were not disclosed to Plaintiffs in violation of Minn Stat. §§ 325F.691, Subd. 1(b)(2) and 47.206, Subd. 7(d)(2).

129.   MinnCo's unreasonable delay also included failure to take actions necessary to process or approve the loan within a reasonable period of time in violation of Minn Stat. §§ 325F.691, Subd. 1(b)(3) and and 47.206, Subd. 7(d)(3).

130.   MinnCo also violated Minnesota's Mortgage Originator and Servicer Licensing Act, Minn. Stat. § 58.13 Subd. 1(a)(3) by unreasonably delaying the

processing of a residential loan application, or the closing of a residential mortgage loan.

131.    Pursuant to Minn. Stat. § 58.13 Subd. 1(a)(3), evidence of unreasonable delay includes but is not limited to those factors identified in Minn. Stat. § 47.206, Subd. 7(d).

132.    By the acts complained of herein, MinnCo also violated Minnesota's Mortgage Originator and Servicer Licensing Act, Minn. Stat. § 58.13 Subd. 1(a)(9) by making or causing to be made, directly or indirectly, any false, deceptive, or misleading statement or representation in connection with a residential loan transaction.

133.    The Plaintiffs have a private right of action against MinnCo pursuant to Minn. Stat. § 58.18 Subd. 2.

134.    Additionally, a borrower injured by a violation of Minn. Stat. § 58.13 may also bring an action under Minn. Stat. § 8.31.  A private right of action by a borrower under this chapter is in the public interest.

135.    For violating Minn. Stat. §§ 325F.691 and 47.206, MinnCo is liable to the Tischlers for a penalty in the amount of their out of pocket-damages, including the present value of the increased costs over the normal life of the loan or specific performance of the agreement.  MinnCo is also liable for $500 for each unreasonable delay in processing a loan application that causes an interest rate or discount point agreement to expire before closing.

136.   As a result of MinnCo's violations of the Minnesota Mortgage Originator and Servicer Licensing Act, MinnCo is liable to Plaintiffs for actual damages, statutory damages equal to the amount of all lender fees included in the amount of the principal of the residential mortgage loan, punitive damages if appropriate, and court costs and reasonable attorney fees pursuant to Minn. Stat. § 58.18 subd. 1(1-4).

137.   As a result of MinnCo's violations of the Minnesota Mortgage Originator and Servicer Licensing Act, and pursuant to Minnesota's Private Attorney General Statute, MinnCo is liable to Plaintiffs for actual damages, costs and disbursements, including costs of investigation and attorney fees and other equitable relief as determined by the Court.

138.   Pursuant to the Private Attorney General Statute, the Court may enter a consent judgment or decree without the finding or illegality.

## VI.  DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

## VII.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Michael and Samantha Tischler respectfully ask this Court to award judgment as follows:

1.   Certification of this action to proceed as a class action;

2.   Appointing Plaintiffs as class representatives;

3.   Appointing Plaintiff's counsel as class counsel;

4.   As a result of MinnCo's violations of the Truth-In-Lending Act and

24

Regulation Z, MinnCo is liable to the Plaintiffs for:

      a.  Statutory damages in the amount of $4,000, per borrower, as provided by 15 U.S.C. § 1640(a)(2)(A), for MinnCo's failure to disclose any of the requisite disclosures pursuant to 12 C.F.R. §§ 1026.18 and 1026.19;

      b.  Statutory damages in the amount of $4,000, as provided by 15 U.S.C. § 1640(a)(2)(A), for MinnCo's failure to provide a notice of right of rescission;

      c.  Actual damages, as provided by 15 U.S.C. § 1640(a)(1), in an amount to be determined, which include all settlement costs and fees that the Plaintiffs paid, and any interest or finance charges that were wrongfully assessed;

      d.  Reasonable attorney fees for the costs of this action as provided by 15 U.S.C. § 1640(a)(3).

5.     As a result of MinnCo's violations of the Minnesota's Deceptive Trade Practice Act, Minn. Stat. § 325F.691, Minn. Stat. § 47, Minnesota's Mortgage Originator and Servicer Licensing Act, Minn. Stat. § 58.01 et seq., and Minnesota's Private Attorney General Statute, Minn. Stat. § 8.31, MinnCo is liable to the Plaintiffs for:

      a.  Actual damages, statutory damages equal to the amount of all lender fees included in the amount of the principal of the residential mortgage loan, punitive damages if appropriate, and court costs and reasonable attorney fees as provided for in Minn. Stat. § 58.18;

    b.  Actual damages, costs and disbursements, including costs of investigation and attorney fees and other equitable relief as determined by the Court as provide for in Minn. Stat. § 8.31;

    c.  a consent judgment or decree without the finding or illegality as provided for in Minn. Stat. § 8.31;

    d.  A penalty in the amount of the Tischlers' out of pocket-damages, including the present value of the increased costs of the Home Loan over the normal life of the loan or specific performance of the original agreement as provided for in Minn. Stat. §§ 325F.691 and 47.206;

    e.  Statutory damages in the amount of $500 for each unreasonable delay in processing a loan application that causes an interest rate or discount point agreement to expire before closing as provided for in Minn. Stat. §§ 325F.691 and 47.206.

6.    For such other and further relief as to the Court appears just and equitable, including an order awarding the Plaintiffs their costs, disbursements, and attorney fees incurred.

**CHRISTENSEN LAW OFFICE PLLC**

Dated: July 13, 2023      By: /s/Carl E. Christensen
                          Carl E. Christensen (#350412)
                          Chris Wilcox (#392536)
                          305 North Fifth Avenue, Suite 375
                          Minneapolis, MN 55401
                          Phone: (612) 473-1200
                          carl@clawoffice.com
                          chris@clawoffice.com


                          Thomas J. Lyons, Jr., Esq. (#249646)
                          Carter B. Lyons (#0403655)
                          **CONSUMER JUSTICE CENTER, P.A.**
                          367 Commerce Court
                          Vadnais Heights, MN 55127
                          Telephone: (651) 770-9707
                          Facsimile: (651) 704-0907
                          tommy@consumerjusticecenter.com
                          carter@consumerjusticecenter.com

                          Attorneys for Plaintiffs